Filed 9/26/24  P. v. Villano CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NESTOR GALVAN VILLANO,<br><br>Defendant and Appellant. | F086640<br><br>(Super. Ct. No. SC057551A)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Kern County.  Elizabet Rodriguez, Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Nestor Galvan Villano (defendant) was convicted by plea of murder (two counts) and attempted murder.  Defendant admitted a multiple-murder special-circumstance allegation and was sentenced to life in prison without the possibility of parole (LWOP).

**SEE CONCURRING OPINION**

This appeal is taken from an order denying a petition for resentencing under Penal Code section 1172.6.**1**

The trial court denied the petition for lack of a prima facie showing of eligibility. The ruling was based on the admitted special circumstance and the court's understanding that "[n]o one else was involved in these crimes" and defendant "was the only actor in the attempted murder." However, the record of conviction showed the possible involvement of an accomplice. In concluding defendant was the direct perpetrator of each crime, the trial court necessarily resolved conflicts and ambiguities in the evidence. Such factfinding is not permitted at the prima facie stage of section 1172.6 proceedings.

The appellate record does not show the premature factfinding was harmless. The special circumstance of multiple murder convictions establishes ineligibility for relief as to one murder conviction but not necessarily both, and it is irrelevant to the crime of attempted murder. We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged by information with two counts of premeditated murder (§§ 187, 189) and one count of attempted premeditated murder (§§ 664, 187, 189). Each count alleged personal use of a firearm within the meaning of section 12022.5, subdivision (a). Liability for multiple murders was alleged as a special circumstance pursuant to section 190.2, subdivision (a)(3).

On the eve of trial, defendant entered into a plea agreement to avoid the death penalty. He pleaded guilty to all charges and admitted all sentencing allegations. The information in this paragraph comes from a minute order dated August 21, 1995. The appellate record does not contain a plea form or a transcript of the hearing.

---

**1**All undesignated statutory references are to the Penal Code. Defendant erroneously sought relief under former section 1170.95, doing so after the statute had been renumbered as section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10 [eff. Jun. 30, 2022]; *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.) The trial court treated the petition as one seeking relief under the applicable law, and we likewise refer to section 1172.6.

In September 1995, defendant was sentenced to LWOP on each of the murder counts and to an indeterminate life term for the attempted murder. The corresponding minute order contains two unexplained notations: "Counts one and two merge. [¶] All allegations are stricken."[2] (Some capitalization omitted.) The appellate record does not contain a transcript of the sentencing hearing.

In November 2022, defendant filed a petition for resentencing under section 1172.6. Acting without legal representation, defendant checked boxes on a preprinted form to allege (1) the charging document in his case "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) he was "convicted of murder, attempted murder, or manslaughter following a trial or [he] accepted a plea offer in lieu of a trial at which [he] could have been convicted of murder or attempted murder"; and (3) "[he] could not presently be convicted of murder or attempted murder because of changes made to … §§ 188 and 189, effective January 1, 2019." (Boldface and underscoring omitted.) Defendant also checked a box to request the appointment of counsel.

The People filed an opposition. Having previously indicated the case file was "quite voluminous," the People attached 30 pages of material selectively excerpted from transcripts of the preliminary hearing and other pretrial proceedings. The People requested judicial notice of the entire case file, but there is no indication the request was ever ruled upon.

---

[2]LWOP sentences may be imposed concurrently, but a special circumstance finding does not cause multiple murder convictions or the punishment for those convictions to "merge." (See *People v. Halvorsen* (2007) 42 Cal.4th 379, 431 ["the two murders do not 'merge' into one capital crime"]; *People v. Garnica* (1994) 29 Cal.App.4th 1558, 1563–1564.) It is also evident, given the imposition of LWOP, that not "all" of the sentencing allegations were stricken. As indicated by the abstract of judgment, only the gun enhancements were stricken/dismissed.

Briefly summarized, the People's evidence indicated defendant was involved in a late-night brawl outside of a bar. The fight was broken up and defendant left the scene. He returned approximately 10 to 15 minutes later, arriving in a vehicle driven by an unidentified individual. There was gunfire after defendant exited the vehicle. Two people were fatally wounded and a third sustained nonlethal injuries. Eyewitnesses later identified defendant as the shooter. Further details are provided in the Discussion, *post*.

The People's evidence showed that defendant filed a pretrial motion to determine the prosecution's theories of liability. The discrete transcript excerpts make it difficult to determine the full context, but the motion apparently pertained to the jury selection process. The prosecutor stated, "Based on the evidence we anticipate will be presented by both sides …, we anticipate … proceeding at this point in time on the theory that the defendant was the actual killer or the actual shooter in this case, rather than acting as an aider and abettor to somebody else who did the shooting …."

The trial court appointed counsel to represent defendant in the section 1172.6 proceedings. His counsel did not file a reply to the People's opposition and submitted on the petition without presenting oral argument.

In July 2023, the trial court denied the petition for failure to meet the requirement of section 1172.6, subdivision (a)(3). In other words, failure to show that the convictions might be affected by the enactment of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437). The trial court provided the following explanation:

> "At the change of plea hearing on August 21st, 1995 [defendant] pled guilty to two counts of murder and one count of attempted murder. [¶] In the murders of Gonzalez Benitez Arrellano[3] and Miguel Jimenez, [defendant] also admitted to personally using a firearm. He also admitted to the special circumstance of multiple murders under … Section 190.2(a)(3). [¶] [Defendant] admitted to the attempted murder of [M.O.]

---

[3]Given that the victim's names are variously spelled in the record and it is unclear which one is the correct spelling, we will follow the usage of the source in which it appears.

4.

and the enhancement of personally using a firearm in the commission of that specific crime.

"A multiple murder special circumstance is predicated on the finding the defendant was the actual killer or harbored an intent to kill as an aider and abettor. That's [*People v. Nunez and Satele* (2013) 57 Cal.4th 1, 45].

"No one else was involved in these crimes charged, and therefore the only means of support for multiple murder special circumstance plea was that the two murders rested on the malice of theory—excuse me—rested on a malice theory of murder, not felony murder or murder under the natural probable consequences doctrine.

"[Defendant] had to be admitting that he was the actual killer to have pled to a multiple murder special circumstance enhancement. [¶] Furthermore, [defendant] was the only actor in the attempted murder. [¶] Pursuant to the Information, [defendant] was not charged under a theory or an intent of another to commit murder could have been imputed to him. [*Sic*.]

"As the one who pled to two counts of murder and one count of attempted murder[,] all with personal use of a firearm[,] and to the special circumstance of multiple murders, [defendant] could still be convicted of two counts of murder and attempted murder even after the changes to … Section 188 or 189 made effective January 1st, 2019. [¶] Therefore, the defendant has not made a prima facie showing and the petition is dismissed."

## DISCUSSION

### I. Standard of Review

The denial of a section 1172.6 petition at the prima facie stage is reviewed de novo. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.) Any errors are assessed for prejudice under the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818. (See *People v. Lewis* (2021) 11 Cal.5th 952, 973; *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1239 [trial court's prima facie ruling of ineligibility affirmed despite improper reliance on factual summary in earlier appellate opinion]; *People v. Hurtado* (2023) 89 Cal.App.5th 887, 892 ["a trial court's statutory omissions at the first step of the section 1172.6 process are not state or federal constitutional violations"].) The *Watson*

test asks whether it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836.)

## II. Legal Overview

Senate Bill 1437 amended section 188 to prohibit the imputation of malice to a defendant "based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) This amendment effectively abrogated the natural and probable consequences doctrine as a theory of liability for murder and attempted murder. (*People v. Curiel* (2023) 15 Cal.5th 433, 440; see Stats. 2021, ch. 551, § 1, subd. (a) [clarifying applicability to attempted murder].) Prior to this change, an aider and abettor who acted without the intent to kill "could be held liable not only for the crime they intend to commit with their confederate (the target crime), but also for any other offense (nontarget crime)— including murder—'committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted.'" (*People v. Lopez* (2023) 88 Cal.App.5th 566, 574–575.) "[T]he necessary mental state was simply the intent to aid and abet an accomplice in the commission of a criminal act that, 'judged objectively,' would 'naturally, probably, and foreseeably result in a murder'" or attempted murder. (*Id.* at p. 575; accord, *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 456.)

Section 189 was amended by Senate Bill 1437 to revise the felony-murder rule. Previously, "a defendant was liable for first degree murder if their confederate killed someone while they (the defendant) participated in the commission or attempted commission of a qualifying felony. [Citation.] The necessary mental state was simply the intent to commit a qualifying felony." (*People v. Lopez, supra*, 88 Cal.App.5th at p. 574.) Liability under a felony-murder theory is now limited to (1) actual killers; (2) those who acted with express malice in aiding and abetting the commission of first degree murder by the actual killer; and (3) "'major participant[s] in the underlying felony' who

6.

'acted with reckless indifference to human life.'" (*People v. Wilson* (2023) 14 Cal.5th 839, 869, quoting § 189, subd. (e)(3).)

Senate Bill 1437 also "created a procedural mechanism 'for those convicted of felony murder or murder [or attempted murder] under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction." (*People v. Curiel*, *supra*, 15 Cal.5th at p. 449.) Such persons may file a petition for resentencing with the court in which they were sentenced. (§ 1172.6, subd. (b)(1).) Successful petitioners are entitled to have the "'conviction, and any allegations and enhancements attached to the conviction' vacated and to be 'resentenced on the remaining charges.'" (*People v. Arellano* (2024) 16 Cal.5th 457, 464.) "[A] successful petitioner who was charged with murder 'generically, and the target offense was not charged,' is entitled to have the murder conviction 'redesignated' as 'the target offense' of the natural and probable consequences theory—or the 'underlying felony' of the felony murder—and to be resentenced accordingly." (*Ibid.*)

The resentencing process "begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to … Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437." (*People v. Strong*, *supra*, 13 Cal.5th at p. 708, quoting § 1172.6, subd. (a)(3).) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.'" (*Strong*, at p. 708, quoting § 1172.6, subd. (c).) The initial assessment occurs during what is commonly known as the prima facie stage. (See, e.g., *People v. Curiel*, *supra*, 15 Cal.5th at p. 463.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis*, *supra*, 11 Cal.5th at p.

971.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'  [Citation.]  [T]he 'prima facie bar was intentionally and correctly set very low.'"  (*Id*. at p. 972.)  "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'"  (*Id*. at p. 971.)

"At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record."  (*People v. Curiel*, *supra*, 15 Cal.5th at p. 463.)  "In the plea context, a petitioner … is ineligible for resentencing if the record establishes, as a matter of law, that (1) the complaint, information, or indictment did not allow the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory of imputed malice; (2) the petitioner was not convicted under such theory; or (3) the petitioner could presently be convicted of murder or attempted murder under the law as amended by [section 1172.6]."  (*People v. Flores* (2022) 76 Cal.App.5th 974, 987.)

If the trial court's records conclusively establish the petitioner's ineligibility for relief, the petition may be denied without further proceedings.  (*People v. Strong*, *supra*, 13 Cal.5th at p. 708.)  If the petitioner makes the necessary prima facie showing, the court must issue an order to show cause as to why the petition should not be granted.  (*Ibid.*)  The parties may then stipulate to the petitioner's eligibility for relief or have the matter proceed to an evidentiary hearing.  (§ 1172.6, subd. (d).)  At the evidentiary hearing, the trial court may weigh the evidence and draw inferences from the relevant circumstances to determine whether the parties have met "their respective burdens."  (*Id.*, subd. (d)(3).)

## III.  Pertinent Case Law

There is a split of authority regarding the extent to which a trial court can rely on a preliminary hearing transcript at the prima facie stage of section 1172.6 proceedings. (Compare *People v. Williams* (2024) 103 Cal.App.5th 375, 403–405, review granted Sept. 11, 2024, S286314, with *People v. Mares* (2024) 99 Cal.App.5th 1158, 1166–1169, review granted May 1, 2024, S284232, *People v. Pickett* (2023) 93 Cal.App.5th 982, 988–990, review granted Oct. 11, 2023, S281643, and *People v. Patton* (2023) 89 Cal.App.5th 649, 657–658, review granted June 28, 2023, S279670.)  This case does not require us to take a position on the divergent viewpoints.  In light of guidance provided in *People v. Lewis*, *supra*, 11 Cal.5th 952, there is a general consensus that preliminary hearing evidence cannot support the denial of a section 1172.6 petition at the prima facie stage if the evidence is conflicting or ambiguous regarding potential theories of accomplice liability.

In *Patton*, the appellant was charged based on (1) video evidence of a lone gunman firing upon the victim and (2) witness testimony identifying him as the shooter. (*People v. Patton*, *supra*, 89 Cal.App.5th at pp. 652–653, review granted.)  The appellant pleaded no contest to attempted murder and admitted he "'personally used and discharged a firearm in the course of the crime.'" (*Id*. at p. 653.)  When the People opposed the appellant's section 1172.6 petition, he declined to file a response and submitted on the petition without argument. (*Patton*, at pp. 654–655.)  Because the record of conviction was wholly and unequivocally refutative of key allegations in the petition (*id*. at p. 657), the *Patton* court reasoned that no "'factfinding, weighing of evidence, or credibility determinations'" were necessary to deny relief at the prima facie stage (*id*. at pp. 657–658).

The *Pickett* and *Mares* cases involved similarly refutative preliminary hearing evidence.  In *Mares*, appellant Daniel Mares admitted to police that he stabbed the victim, and his plea included an admission of personally using a knife during the offense.

9.

(*People v. Mares*, *supra*, 99 Cal.App.5th at pp. 1161–1162, review granted.)  Although his girlfriend was also present during the altercation, "[n]o evidence suggested anyone other than Mares physically fought with [the victim] or stabbed him."  (*Id.* at p. 1162.)  The preliminary hearing evidence in *Pickett* was more circumstantial, but there was "nothing to suggest that any other person was involved in the incident."  (*People v. Pickett*, *supra*, 93 Cal.App.5th at p. 990, review granted.)  In both cases the record of conviction "unambiguously" refuted the allegations in the section 1172.6 petition.  (*Mares*, at p. 1161; see *Pickett*, at pp. 989–990.)  Both appellants also declined to respond to the People's oppositions.  (*Mares*, at p. 1163; *Pickett*, at p. 987.)

In this district's *Flores* opinion, consideration of the preliminary hearing transcript was limited to statements qualifying as party admissions under Evidence Code section 1220.  (*People v. Flores*, *supra*, 76 Cal.App.5th at pp. 988–989 & fn. 10.)  That evidence showed the involvement of an accomplice who may have been the actual killer.  (*Id*. at pp. 979–980, 991.)  "It [did] not exclude the possibility that petitioner was, or could have been, convicted under the imputed malice theories eliminated by Senate Bill No. 1437."  (*Flores*, at p. 991.)  Ruling him ineligible for resentencing based on the record of conviction necessarily required "judicial factfinding," and so the trial court's order denying relief at the prima facie stage was reversed.  (*Id*. at pp. 991–992.)

The case of *People v. Estrada* (2024) 101 Cal.App.5th 328 provides another example of premature factfinding.  The *Estrada* appellant pleaded no contest to manslaughter and attempted murder without premeditation, with weapon and great bodily injury (GBI) enhancements under sections 12022, subdivision (b)(1), and 12022.7, subdivision (a).  (*Estrada*, at p. 334.)  The appellant's section 1172.6 petition was denied at the prima facie stage based on a finding he was "'the actual killer.'"  (*Estrada*, at p. 334.)  The trial court relied on the preliminary hearing evidence, including the appellant's admission to stabbing one victim and participating in the nonfatal beating of another.  But the decedent sustained 12 stab wounds, and the appellant only admitted to stabbing him

10.

"'two or three times.'" (*Id*. at p. 333.) The incident was preceded by a fight between two groups, and police immediately located two other suspects with blood on their clothing—one of whom had been carrying a box cutter. (*Id*. at pp. 332–333.) Moreover, a third individual was separately charged with committing aggravated assault with GBI on the same victim named in the attempted murder count. (*Id*. at p. 332.)

The *Estrada* court distinguished *Patton*, *Pickett*, and *Mares* without disagreeing with their holdings: "In those cases, the Courts of Appeal held that the evidence contained in the preliminary hearing transcript conclusively foreclosed the possibility that the petitioner was convicted under an invalid theory of liability. Thus, the preliminary hearing evidence did not require the court to engage in impermissible factfinding." (*People v. Estrada*, *supra*, 101 Cal.App.5th at p. 340.) "Here, in contrast, relying on the preliminary hearing transcript to foreclose a successful section 1172.6 motion at [the prima facie] stage would require the court to engage in impermissible factfinding." (*Ibid*.)

In *Williams*, several eyewitnesses testified at the preliminary hearing. (*People v. Williams*, *supra*, 103 Cal.App.5th at p. 383, review granted.) According to the uncontroverted evidence, a single perpetrator shot a man in the face while both were seated inside a minivan. (*Ibid*.; see *id*. at pp. 412–413 [dis. opn. of Meehan, J.].) An unidentified person may have assisted the gunman by driving him to the scene and parking the car in a way that "blocked in the minivan." (*Williams*, at p. 383.) However, it was undisputed that only one perpetrator entered the minivan; the shooter's accomplice remained in the driver's seat of the other vehicle. (*Ibid*.; see *Williams*, at pp. 412–413 [dis. opn. of Meehan, J.].)

The *Williams* appellant pleaded no contest to a charge of attempted murder, and in doing so admitted to personal use of a firearm and personal infliction of GBI. (*People v. Williams*, *supra*, 103 Cal.App.5th at pp. 383–384, rev. granted.) A two-justice majority, relying on certain language in *People v. Curiel*, *supra*, 15 Cal.5th 433, held the evidence

11.

was insufficient to justify the denial of a section 1172.6 petition at the prima facie stage. The dissenting justice opined that *Curiel* does not prohibit such a ruling "where the record is not only devoid of any support for the petition allegations, but … expressly contradicts them by showing that the petitioner is ineligible for relief under the statute because he was the direct perpetrator of the crime." (*Williams*, at p. 411 [dis. opn. of Meehan, J.].)  However, Justice Meehan "agree[d] with the majority that where, as in *Curiel*, the petition and the record of conviction reflect that the petitioner may have been convicted … as an accomplice under a now invalid theory of liability, the petition may not be dismissed at the prima facie stage unless the record conclusively establishes every element of the offense under a valid theory." (*Id*. at p. 407.)

## IV.    Analysis

Our limited information about the subject incident comes from the opposition brief filed in the proceedings below.  As earlier noted, the evidence submitted with the People's opposition was selectively excerpted from the preliminary hearing transcript and other material in the record of conviction.  These excerpts show the likely involvement of an accomplice and raise questions about the extent of the accomplice's role in the crimes.

The shooting in this case was preceded by a fight involving at least four people, including defendant.  Another participant was murder victim Gonzalo Benitez Arreano.[4] The third person, R.C., later testified as a percipient witness.  His testimony included this statement:  "Well, the fight, him [defendant] and Gonzalo started fighting first, *and then one of his friends jumped in*, and that's when I jumped in, and at the end of the fight, it was a pile against a pile of people, so then he left [meaning defendant left], and then he was going to come back, … and he did, he came back."  (Italics added.)

Another eyewitness, E.C., also testified about the brawl:  "[I]t was a group of five and four—totally, there was about 11 guys fighting."  From the testimony of R.C. and

---

[4]See footnote 3, *ante*.

12.

E.C., there is evidence of at least one other person aiding defendant in his fight against victim Arreano. This evidence becomes significant when considered along with testimony given by Arreano's brother at the preliminary hearing:

> "[PROSECUTOR:] Q. Can you tell me what you saw when he [referring to defendant] came back ten or fifteen minutes later?

> "[WITNESS:] A. I went on—my brother called me on the phone, because a cousin of mine had gone to take a girl home and we didn't have a ride and I was coming back when I saw *them* arriving in the car and I saw *them* come back and that was it and I just said that they were coming back and then that's when *they* started shooting." (Italics added.)

The victim's brother further testified, in pertinent part, as follows:

> "Q. Did he start to shoot the gun while he was still in the car?

> "A. No. He got out of the car. He got out of the car to shoot, because another guy was driving. I don't know who it was, he got back in the car and they left."

There is ambiguity in the statement, "[T]hey started shooting," and it permits the inference there were multiple people firing guns. In other testimony, the same witness identified defendant when asked, "[W]ho the person … who you saw shooting?" With the benefit of complete transcripts instead of disjointed excerpts, one might easily conclude the witness's use of the word "they" did not actually refer to multiple shooters. But reaching that conclusion requires weighing the evidence and resolving conflicts/ambiguities in the testimony, i.e., factfinding. Such factfinding is prohibited at the prima facie stage under all of the cases discussed in the previous part of this opinion.

The trial court's factfinding was erroneous because it was premature. The error is not rendered harmless by defendant's admitted use of a firearm within the meaning of section 12022.5, subdivision (a). "Proof of firearm use during a felony does not require a showing the defendant ever fired a weapon." (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) Nor does it require proof of the intent to kill. (See *People Wardell* (2008) 162

13.

Cal.App.4th 1484, 1494 ["An intentional use of a firearm in the commission of a crime does not encompass any specific intent"].)

The prosecutor's theory of liability as stated for purposes of voir dire may be given probative weight at an evidentiary hearing on remand (see § 1172.6, subd. (d)(3)), but it did not establish defendant's ineligibility at the prima facie stage as a matter of law. Due process does not invariably require disclosure of all potential theories of liability prior to trial. (See *People v. Davis* (1995) 10 Cal.4th 463, 513–514 [finding sufficient notice where appellant "was informed early in the trial and thereafter that the prosecution intended to pursue a felony-murder theory"]; *People v. Gurule* (2002) 28 Cal.4th 557, 629 ["An information or indictment need not specify the theory of murder on which the prosecution will rely"].) Although "a defendant will generally receive such notice from the testimony presented at the preliminary hearing" (*People v. Scully* (2021) 11 Cal.5th 542, 599), cases have "deemed notice of a new theory to be constitutionally sufficient … by the People's express mention of that theory before or during trial sufficiently in advance of closing argument" (*People v. Quiroz* (2013) 215 Cal.App.4th 65, 70).

The trial court appears to have primarily relied on the special circumstance of multiple-murder convictions, but this fact is not legally conclusive of defendant's ineligibility for relief on all counts. Section 190.2, subdivision (a)(3), requires "that the defendant has been convicted of at least two counts of murder, at least one of which must be first degree murder, and that the defendant either actually killed or intended to kill *at least one* of the victims." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 495, italics added.) Prior to the enactment of Senate Bill 1437, the special circumstance could apply if one conviction was based on actual killing or harboring express malice and the other conviction was based on the natural and probable consequences doctrine. (E.g., *People v. Maciel* (2013) 57 Cal.4th 482, 521.) At the time of defendant's plea, the California Supreme Court had not yet clarified that first degree premeditated murder could not be

14.

based on a natural and probable consequences theory.  (See *People v. Chiu* (2014) 59 Cal.4th 155, 167.)

"[R]egardless of the number of murders committed, only one multiple-murder special circumstance can be charged."  (*People v. Garnica*, *supra*, 29 Cal.App.4th at p. 1563.)  Here, the special circumstance allegation was included in the second of the two murder counts.  Even assuming a relevant inference could be drawn from this fact, nothing in the appellate record allows us to determine *as a matter of law* which of the two murder counts was necessarily based on defendant being the actual killer or harboring express malice.  Furthermore, the special circumstance has no relevance to defendant's conviction of attempted murder.

## DISPOSITION

The order denying and dismissing the petition for resentencing is reversed.  The matter is remanded with directions to issue an order to show cause and conduct further proceedings as may be necessary pursuant to section 1172.6, subdivision (d).

PEÑA, J.

I CONCUR:

FRANSON, J.

15.

DETJEN, Acting P. J., Concurring.

The majority holds the evidence presented at petitioner Nestor Galvan Villano's preliminary hearing was conflicting and ambiguous and therefore cannot support the trial court's denial of his Penal Code[1] section 1172.6 petition at the prima facie stage. As explained *post*, I do not share their view of that evidence.

In addition to maintaining my view that a preliminary hearing does not conclusively establish any particular theory of guilt and so does not establish a petitioner is ineligible for relief at this stage of a section 1172.6 resentencing hearing (*People v. Williams* (2024) 103 Cal.App.5th 375, 397–403 (maj. opn. of Detjen, A. P. J.) rev. granted Sept. 11, 2024, S286314 (*Williams*)), it is my opinion that the reality demonstrated in this case—that preliminary hearing evidence can reasonably be viewed as conflicting or ambiguous by one judge or justice and just as reasonably be viewed as uncontroverted by another—illuminates the flaw in the reasoning of *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670 (*Patton*), *People v. Pickett* (2023) 93 Cal.App.5th 982, review granted October 11, 2023, S281643 (*Pickett*), and *People v. Mares* (2024) 99 Cal.App.5th 1158, review granted May 1, 2024, S284232 (*Mares*). I therefore concur in the result reached by the majority but for the reasons stated below.

## I.      Factual and Procedural Background

Very briefly stated,[2] a percipient witness testified at the preliminary hearing that, in February 1994, he observed petitioner engaged in a fight in a bar parking lot with the witness's brother, Gonzalo Benitez Arrellano, an eventual murder victim. Multiple people were involved in the fight. One percipient witness testified, "[Petitioner] and

---

[1] Undesignated statutory references are to the Penal Code.

[2] As the majority notes, this case was decided based on transcripts submitted by the People that were heavily excerpted and, in many instances, lacked information regarding the witness who is testifying and/or the proceeding at which the testimony was given.

[Arrellano] started fighting first, and then one of his friends jumped in, and that's when I jumped in, and at the end of the fight, it was a pile against a pile of people . . . ." Another percipient witness testified, "[I]t was a group of five and four—totally, there was about 11 guys fighting." After the fight was broken up, petitioner stated, "Don't leave, I'm going to come back. This isn't the end yet."

Petitioner returned 10 to 15 minutes later, stated, "I'm going to get you, you motherfuckers," and began shooting. Arrellano's brother described petitioner's return:

> "A    . . . I saw them arriving in the car and I saw them come back and that was it and I just said that they were coming back and then that's when they started shooting.

> "*Q    Can you tell me who the person was who you saw shooting?*

> "*A    Him [identifying petitioner].*" (Italics added.)

Arrellano's brother further clarified, "He got out of the car to shoot, because another guy was driving. I don't know who it was, he got back in the car and they left."

Arrellano and another man, Miguel Jimenez, were shot and killed. M.O. was shot and injured but survived.

In 1995, petitioner pled guilty to two counts of first degree murder (§ 187, subd. (a); counts 1 and 2), and one count of premeditated attempted murder (§§ 187, subd. (a), 664; count 3). As to each count, he admitted a firearm enhancement (§ 12022.5, subd. (a)). As to count 2, he admitted a multiple-murder special circumstance (§ 190.2, subd. (a)(3)). On each of counts 1 and 2, petitioner was sentenced to a term of life without the possibility of parole. On count 3, petitioner was sentenced to a term of life with the possibility of parole. All terms were ordered to run concurrently.

Eventually, petitioner filed a petition for resentencing pursuant to section 1172.6. The trial court denied the petition at the prima facie stage after concluding he was ineligible for resentencing. The court determined the record of conviction established petitioner was the actual perpetrator of the murders and attempted murder, which he had

2.

committed with malice, and he therefore could still be convicted of murder and attempted murder after the effective date of Senate Bill No. 1437.

## II.     *Patton, Pickett, Mares, and Williams*

Courts of Appeal are split on the role of preliminary hearing evidence in establishing a petitioner's ineligibility for resentencing at the prima facie stage. (*Williams*, *supra*, 103 Cal.App.5th at pp. 389–394, rev. granted [collecting cases].)  Our Supreme Court has granted review to resolve this issue.  (*Patton*, *supra*, 89 Cal.App.5th 649, rev. granted.)[3]

In *Patton*, the Court of Appeal held that uncontroverted testimony at the preliminary hearing established the petitioner was "the sole and actual perpetrator of the attempted murder" and therefore ineligible for resentencing as a matter of law.  (*Patton*, *supra*, 89 Cal.App.5th at p. 657, rev. granted.)  Likewise, in *Pickett*, *supra*, 93 Cal.App.5th 982, review granted, the court held that the preliminary hearing transcript established the petitioner's ineligibility for resentencing as a matter of law, where the preliminary hearing transcript contained "nothing to suggest that any other person was involved in the incident" (*id.* at p. 990) and the petitioner did not allege any facts concerning the killing, deny he was the actual killer, assert another person fired the fatal shot, or allege he acted without intent to kill (*id.* at p. 989).  Similarly, in *Mares*, *supra*, 99 Cal.App.5th 1158, review granted, the court held that a preliminary hearing transcript, which showed the People were pursuing only an actual killer theory, was sufficient to defeat the conclusory allegations of resentencing eligibility in the petitioner's petition. (*Id.* at p. 1166.)  Most recently, however, in *Williams*, *supra*, 103 Cal.App.5th at pages 397–403, review granted, a divided panel of this court rejected the reasoning of *Patton*,

---

[3] Our Supreme Court has granted review in *Patton* to determine whether the trial court engaged in impermissible judicial factfinding by relying on the preliminary hearing transcript to deny a section 1172.6 petition at the prima facie stage.  (*People v. Patton* (June 28, 2023, S279670).)

*Pickett*, and *Mares*, and held that a preliminary hearing transcript cannot conclusively establish a petitioner was convicted under a valid theory. The dissent in *Williams* would have held to the contrary. (*Id.* at pp. 406–426 (dis. opn. of Meehan, J.).)

## III. Analysis

I agree with the majority that, in some cases, conflicts in the evidence may relieve a court of the obligation to resolve questions regarding the role of the preliminary hearing transcript in the prima facie review. *Patton*, *Pickett*, and *Mares*, as well as the dissent in *Williams*, were predicated on what was described as uncontroverted preliminary hearing testimony that the petitioner was the sole and direct perpetrator of the relevant offense. (*Williams*, *supra*, 103 Cal.App.5th at pp. 411–412 (dis. opn. of Meehan, J.) [evidence showed petitioner was the direct perpetrator acting alone]; *Mares*, *supra*, 99 Cal.App.5th at pp. 1161–1162, rev. granted [police testified to the petitioner's admissions to stabbing the victim and acting alone]; *Pickett*, *supra*, 93 Cal.App.5th at p. 986, rev. granted ["There was no evidence suggesting that anyone other than [the petitioner] was involved in [the victim's] death."]; *Patton*, *supra*, 89 Cal.App.5th at pp. 652–653, 657, rev. granted [based on law enforcement testimony that surveillance video showed a man they knew to be the petitioner walking up to the victim and shooting him, the court determined the petitioner was "the sole and actual perpetrator of the attempted murder"].) Because the evidence was uncontroverted, those opinions held it could rebut the factual allegations of the petition without requiring the trial court to resort to improper factfinding at the prima facie stage. (*Williams*, at p. 415 (dis. opn. of Meehan, J.); *Mares*, at pp. 1170–1171; *Pickett*, at p. 990; *Patton*, at p. 658.) Under this reasoning, conflicts in the evidence presented at the preliminary hearing are sufficient to create a factual issue regarding petitioner's role in the offense that can be resolved only through an evidentiary hearing.

In contrast, *Williams* would reach the same result for a different reason: Because a preliminary hearing transcript does not conclusively establish any particular theory of guilt, it cannot establish that a petitioner was convicted under a valid theory of murder or

4.

attempted murder, and thus cannot conclusively rebut a petitioner's allegation that he or she could not presently be convicted of murder or attempted murder "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) Under this reasoning, *any* reliance on the preliminary hearing transcript involves improper factfinding at the prima facie stage. (See *People v. Rivera* (2021) 62 Cal.App.5th 217, 236–239 [because the petitioner did not admit to the truth of any evidence presented at the grand jury, the grand jury evidence could not demonstrate that the petitioner was ineligible for resentencing as a matter of law].)

Although these lines of authority can produce the same result, I write separately because, as I stated *ante*, the majority's reasoning demonstrates the flaw in *Patton*, *Pickett*, and *Mares*. Here, the majority determines that a vague pronoun used by a percipient witness at the preliminary hearing is sufficient to cast doubt on petitioner's role in the offense despite that witness offering immediate clarifying testimony that petitioner was the shooter. However, the evidence in this case is substantially similar to that presented in *Williams*, which the dissenting justice in that case characterized as "uncontradicted" on the issue of whether the petitioner was "the actual shooter who acted alone."[4] (*Williams*, *supra*, 103 Cal.App.5th at p. 415 (dis. opn. of Meehan, J.).)

Preliminary hearing evidence necessarily requires weighing of the evidence and credibility determinations by a trier of fact. (*Williams*, *supra*, 103 Cal.App.5th at p. 397, rev. granted.) It therefore is unsurprising that facts viewed as uncontroverted by one judge or justice may be considered conflicting or ambiguous by another. A preliminary hearing is designed only to provide probable cause to hold a defendant to answer (§ 872, subd. (a)) and any number of factors may serve to undermine the degree of certainty that

---

[4] In both cases, the petitioner was the sole individual identified as a shooter and the only other participant in the offense was a driver who remained in the vehicle. (Compare *Williams*, *supra*, 103 Cal.App.5th at p. 383, rev. granted with maj. opn. *ante*, at p. 13.) Although petitioner in the instant case was involved in a bar fight with others prior to the shooting, it is unclear how that temporally distinct incident undermines his liability for murder or attempted murder.

can be obtained from the evidence (see *Williams*, at p. 405, fn. 15 [percipient witnesses may have credibility issues that could cast doubt on their testimony]). As in this case, seemingly conclusive testimony may be undermined by nuance not raised by any party to the proceeding, thus rendering illusory any notion that preliminary hearing evidence may be entirely uncontroverted, uncontradicted, unambiguous, or conclusive.

Rather than fitting this case into a mold created by cases involving multiple coperpetrators or other conflicting testimony concerning the identity of the killer, I would apply *Williams* to hold that the preliminary hearing transcript cannot establish petitioner's guilt of murder or attempted murder under any specific theory, and thus does not rebut petitioner's allegation that he could not presently be convicted of murder or attempted murder "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)

## IV. Conclusion

For the reasons stated herein, I agree with the majority that the preliminary hearing transcript does not establish petitioner's ineligibility for resentencing as a matter of law. Additionally, I join in the majority's determination that neither the prosecutor's stated theory of liability for purposes of voir dire, nor the admitted firearm enhancement or multiple-murder special circumstance, establishes petitioner's ineligibility for resentencing as a matter of law.

Accordingly, I concur in the majority's disposition.


DETJEN, Acting P. J.


6.